UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONGREGANTS OF MOSDOS CHOFETZ
CHAIM INC. a/k/a KIRYAS RADIN,

                Plaintiffs,

v.

MOSDOS CHOFETZ CHAIM INC.,
et al.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-05654 (PMH)

PHILIP M. HALPERN, United States District Judge:

      On April 22, 2021, the underlying adversary proceeding captioned *In re Mosdos Chofetz Chaim Inc.*, No. 21-07023 (Bankr. S.D.N.Y. 2021) ("Adv. Proc.") was commenced before Judge Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). Rabbi Mayer Zaks ("Appellant") has since filed appeals from several orders issued by the Bankruptcy Court in the underlying adversary proceeding and in other adversary proceedings, which are currently pending before this Court.[1] This particular appeal concerns the May 25, 2021 order ("Injunctive Order") issued by Judge Drain in the underlying adversary proceeding, which enjoins Appellant from, *inter alia*: (1) entering or remaining on the real property owned by Congregation Radin Development, Inc. ("CRDI"), located at 1-50 Kiryas Radin Drive, Spring Valley, New York 10977 (the "Property"), including, without limitation, the yeshiva

---

[1] *See, e.g.*, *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-02872 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-02878 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-08691 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-09186 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-09256 (S.D.N.Y. 2021).

building located on the Property; and (2) disrupting, conducting, or interfering with any religious service or study taking place on the Property. (Adv. Proc., Doc. 24). Appellant also appealed from a prior, but substantively identical, version of the Injunctive Order on May 25, 2021.[2]

On June 16, 2021, the Court heard oral argument from the parties and, *inter alia*, denied a temporary restraining order to Appellant, and granted Appellant permission to proceed by Order to Show Cause for a preliminary injunction. (*In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-04688, Doc. 13). During oral argument, Appellant stated that he "seeks injunctive relief on two, and only two, bases: (1) whether the bankruptcy court has subject matter jurisdiction to entertain the adversary proceeding which formed the basis for the bankruptcy court's May 24, 2021 injunction; and (2) whether Rabbi Mayer Zaks is subject to the bankruptcy court's May 24, 2021 injunction because of failure of service and/or notice of the proceeding." (*Id.*). The Court, following the oral argument and based upon Appellant's stated limitations, directed that "[n]o other applications or arguments will be considered by the Court in connection with Appellant's preliminary injunction application." (*Id.*). Appellant filed his papers in support of his motion for a stay pending appeal on June 25, 2021. (*Id.*; Docs. 14-16; Doc. 17, "App't Br."). Mosdos Chofetz Chaim Inc. ("Mosdos"), Chofetz Chaim Inc., CRDI, and Rabbi Aryeh Zaks (collectively, "Appellees") filed their joint opposition brief and exhibits annexed thereto on July 6, 2021. (Doc. 26, "Opp. Br.").

---

[2] Appellant's buckshot approach to appeals from Bankruptcy Court orders has produced a murky procedural history. The Bankruptcy Court issued an injunctive order on May 24, 2021 (Adv. Proc., Doc. 22), from which Appellant appealed on May 25, 2021. (*In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-04688 (S.D.N.Y. 2021), Doc. 1). The Bankruptcy Court issued a substantively identical, albeit modified, order on May 25, 2021, from which Appellant also appealed on June 30, 2021. (Doc. 1). On July 15, 2021, the Court consolidated Appeal Nos. 21-CV-04688 and 21-CV-05654 under Federal Rule of Civil Procedure 42(a)(2), closed Appeal No. 21-CV-04688, and directed the parties to file all further pleadings and documents on the docket for Appeal No. 21-CV-05654. (*In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-04688 (S.D.N.Y. 2021), Doc. 36). As such, Appellant's appeal from the Injunctive Order and the associated briefing can be found on the docket sheet for this case captioned *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-05654 (S.D.N.Y. 2021), while the preliminary injunction motion at issue here and the associated briefing can be found on the docket sheet for the case captioned *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-04688 (S.D.N.Y. 2021).

The Court assumes the parties' familiarity with the underlying facts associated with the inability of two brothers, each a rabbi, to get along, and the rest of the procedural history of this action.

## STANDARD OF REVIEW

"The district court may entertain an application to stay an order of the bankruptcy court pending an appeal pursuant to Federal Rule of Bankruptcy Procedure 8007(b)." *In re 461 7th Ave. Mkt., Inc.*, 623 B.R. 681, 688 (S.D.N.Y. 2020). "The request for a stay 'requires application of the familiar four-factor test' laid out by the Supreme Court." *Id*. (quoting *In re Platinum Partners Value Arbitrage Fund L.P.*, No. 18-CV-05176, 2018 WL 3207119, at *3 (S.D.N.Y. June 29. 2018)). Those four factors are:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). While "[t]he first two factors are the most critical," *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020), "[t]he Second Circuit has held that these criteria should be applied 'somewhat like a sliding scale . . . more of one excuses less of the other.'" *In re Platinum Partners*, 2018 WL 3207119, at *3 (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)). "[A] stay is not a matter of right . . . rather, a stay is an exercise of judicial discretion, and [t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion." *U.S. Dep't of Homeland Sec.*, 974 F.3d at 214 (internal quotation marks omitted).

## ANALYSIS

I. Likelihood of Success on the Merits

3

A. <u>Subject Matter Jurisdiction</u>

The first issue raised by Appellant's motion for a stay pending appeal is whether the Bankruptcy Court had subject matter jurisdiction over the underlying adversary proceeding.

"Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334." *In re LightSquared, Inc.*, 539 B.R. 232, 240 (S.D.N.Y. 2015). "Section 1334 vests original jurisdiction in the district courts of 'all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" *Id.* (citing 28 U.S.C. § 1334(b)); *see also In re Chateaugay Corp.*, 213 B.R. 633, 638 (S.D.N.Y. 1997). "The Southern District of New York has, by standing order, delegated its authority in this regard to the Bankruptcy Court." *In re LightSquared, Inc.*, 539 B.R. at 240 (citing *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012)). "The Bankruptcy Court thus has what is commonly referred to as 'related to' jurisdiction." *Id.* "Related to" jurisdiction is broad, *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995), encompassing any proceedings that "might have any 'conceivable effect' on the bankruptcy estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). A case has a "conceivable effect" on the bankruptcy estate "'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Bond Street Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32 (S.D.N.Y. 1994) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Moreover, "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders." *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002). "Bankruptcy courts have been expressly granted jurisdiction to enter injunctive orders that are 'necessary for the consummation of the [reorganization] plan.'" *In re LightSquared, Inc.*, 539 B.R. at 241 (quoting 11 U.S.C. § 1142(b)) (alteration in original)).

Here, while it is undisputed that the Bankruptcy Court had "related to" jurisdiction over the underlying adversary proceeding, Appellant attacks the extent of the Bankruptcy Court's post-confirmation jurisdiction. To that end, Appellant contends that the Bankruptcy Court lacked sufficient post-confirmation jurisdiction to issue the Injunctive Order, thereby rendering the Injunctive Order *ultra vires*. For the following reasons, however, Appellant's likelihood of success on this issue is nil.

It is well-settled that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). Consequently, for a bankruptcy court to exercise post-confirmation jurisdiction, two requirements must be satisfied. "First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement. Second, the plan must provide for the retention of jurisdiction over the dispute." *Id*. at 73-74 (internal citations and quotation marks omitted); *see also In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993); *In re LightSquared, Inc.*, 539 B.R. at 241. Both requirements are satisfied here.

The Bankruptcy Court's October 2, 2019 Findings of Fact, Conclusions of Law and Order Confirming the Second Amended Plan of Reorganization of Mosdos Chofetz Chaim (the "Confirmation Order") (*In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-04688, Doc. 16-3), and Mosdos' Second Amended Plan of Reorganization (the "Plan") (*Id*., Doc. 16-2), each contain broad retention-of-jurisdiction provisions. Specifically, Article 10 of the Plan provides, in part:

> **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to . . .

    i.      Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

    j.      Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan . . .

    m.    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan . . .

    o.     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

    p.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement . . . .

(*Id.*, Doc. 16-2). The Confirmation Order, in similar fashion, provides:

> **ORDERED**, that in addition to the retention of jurisdiction with respect to transfer taxes, the Court shall retain jurisdiction of this case with respect to motions pending before this Court on or before the Effective Date and thereafter, and matters provided for in Article 10 of the Plan, including, but not limited to the consideration of any objections filed within the time permitted pursuant to the Plan to the allowance of any Claim and other matters arising out of or related to the Plan . . . .

(*Id.*, Doc. 16-3). These provisions make unmistakably clear that the Bankruptcy Court retained post-confirmation jurisdiction over disputes like the one raised in the underlying adversary

proceeding, which challenged the validity of the of the sale, as set forth in the Plan, of the Property from Mosdos to CRDI.

As for the "close nexus" to the Plan, Appellant's argument that this dispute "has no effect whatever [sic] on the implementation of the Plan or creditor distributions under the Plan" strains credulity. (App't Br. at 7-8). The complaint filed in the underlying adversary proceeding directly challenged the validity of the provisions in the Plan and Confirmation Order authorizing the "free and clear" sale of the Property from Mosdos to CRDI. (Doc. 26-1 ¶¶ 1, 33, 67-68, 73, 77-78). It is difficult to imagine how such a challenge could not have "any conceivable effect . . . upon the handling and administration of the bankrupt estate" at issue here. *Bond Street Assocs., Ltd.*, 174 B.R. at 32 (internal quotation marks omitted). Indeed, if Appellant's challenge were successful, it would invalidate a $23 million-plus mortgage claim on the Property, revert ownership from CRDI back to Mosdos, and ultimately undermine the Plan's hitherto interpretation, administration, and implementation. (Opp. Br. at 4; App't Br. at 2). Therefore, it is without question that this dispute bears a "close nexus" to the Plan.

Accordingly, the Court finds that Appellant has failed to make any showing—let alone a strong one—that he is likely to succeed on his theory that the Bankruptcy Court lacked sufficient post-confirmation jurisdiction to issue the Injunctive Order.

B. <u>Personal Jurisdiction</u>

Appellant further contends that the Injunctive Order should be stayed pending appeal because he was not subject to the Bankruptcy Court's personal jurisdiction. (App't Br. at 18-22). Specifically, Appellant argues that: (1) he was not a "person bound" by the Injunctive Order under Federal Rule of Civil Procedure 65(d)(2); and (2) he was not served with any Rule 65 motion. (*Id.*). Neither argument is persuasive.

With respect to the first argument, an injunctive order issued under Federal Rule of Civil Procedure 65 binds only the following who received actual notice of it by personal service or otherwise:

> (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2). According to Appellant, he is not bound by the Injunctive Order because: (1) he was not a party to the underlying adversary proceeding in which the Injunctive Order was issued; and (2) he was not in active concert or participation with any party to the adversary proceeding. (App't Br. at 18-22).

Appellees argue that, to the contrary, Appellant was a party to the underlying adversary proceeding because he is a congregant of Mosdos—a religious entity that was one of the plaintiffs in the underlying adversary proceeding and is one of the Appellees here. (Opp. Br. at 22). Appellees further argue that, even if Appellant was not a party, he was an "agent" of a party, i.e., Mosdos. (*Id*. at 21). Lastly, Appellees contend that even if Appellant was not an actual party or an agent of a party, he was, at the very least, in active concert or participation with Mosdos. (*Id*. at 22). The Court agrees with Appellees. Indeed, Appellant himself has represented that he has "prayed, studied and led [Mosdos] for more than 20 years." (*Id*.). Moreover, Appellant claims "that he is both the 'Grand Rabbi' of [Mosdos], as well as a member of its Board of Trustees and an officer of the same." (*Id*. at 21). Accordingly, the Court finds that Appellant was a party to the underlying adversary proceeding, or at the very least, an agent of a party or acting in concert or participation with a party.

Appellant further argues that he was not bound by the Injunctive Order because he was not served with any Rule 65 motion. But Rule 65 does not specifically require that "persons bound"

8

by an injunction be served with a copy of the motion in support thereof. The Rule merely requires that "persons bound" by the injunction receive "actual notice" of the *injunction* "by personal service or otherwise." Fed. R. Civ. P. 65(d)(2); *see also Allstar Mktg. Grp., LLC v. AFACAI*, No. 20-CV-08406, 2021 WL 2555636, at *3 (S.D.N.Y. June 22, 2021) ("Injunctive relief pursuant to Rule 65 is limited to certain individuals, assuming they receive actual notice of the injunction."). Here, there is no question that Appellant "received actual notice of, and was actually aware of" the Injunctive Order. (Opp. Br. at 22). Indeed, Appellant and the attorneys representing him when the Bankruptcy Court issued the Injunctive Order were served with "multiple notices" regarding the motion in support of the Injunctive Order, the papers supporting such motion, the date and time of the hearing on such motion, and the Injunctive Order itself. (*Id*. at 22-24).

In short, Appellant has also failed to make a strong showing that he is likely to succeed on his argument that the Bankruptcy Court lacked personal jurisdiction over him.

II. <u>Irreparable Harm</u>

"'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But Appellant has suffered no such loss here. As Appellant himself acknowledges, the rights guaranteed under the First Amendment are not unlimited, and he is not guaranteed the right to worship on any property he so desires. (Doc. 15 ¶ 12 ("I understand that I do not have a federal constitutional right to worship wherever I want.")). Accordingly, the Injunctive Order, which merely enjoins Appellant from entering the Property and conducting religious services and study thereon, has not and does not deprive Appellant of his right to freely exercise his religion, because he is not the Property's owner and he has no right of access thereto. Such a minor limitation, which only prevents

Appellant from exercising his religion on a property that he has no lawful right to be on, and conversely, protects CRDI's property interests, is hardly a First Amendment deprivation. Because Appellant's First Amendment rights are not impacted by the Injunctive Order, he has failed to show that he has suffered or is likely to suffer irreparable harm absent a stay.

III. <u>Substantial Injury</u>

Appellant argues that "[a] stay cannot possibly harm the other parties to the [a]dversary proceeding." (App't Br. at 23). The Court disagrees. A stay of the Injunctive Order would jeopardize CRDI's property rights, as it would permit Appellant to trespass onto the Property. By contrast, maintaining the status quo would not harm Appellant, because, as discussed above, the Injunctive Order does not deprive him of any First Amendment freedoms. Accordingly, the injury that CRDI would suffer in the event of a stay weighs against granting Appellant's motion.

IV. <u>Public Interest</u>

Lastly, Appellant argues that the public interest favors a stay of the Injunctive Order. Again, the Court disagrees. As discussed above, the public interest is not served by permitting Appellant to trespass on the Property in violation of CRDI's property rights. Despite Appellant's arguments to the contrary, the Injunctive Order has no impact on his First Amendment freedoms. Therefore, Appellant has failed to show that the public interest favors a stay.

## **CONCLUSION**

For the foregoing reasons, Appellant's motion for a stay of the Injunctive Order pending appeal is DENIED.[3]

---

[3] Appellant, as an afterthought, renewed his request for a temporary restraining order staying the Injunctive Order pending a hearing on this motion for a stay pending appeal by including a three (3) sentence argument at the end of his brief. (App't Br. at 24). Appellant, again, failed to adhere to Federal Rule of Civil Procedure 65(d) and this Court's Individual Practice Rule 4.F. In any event, and for the reasons discussed above, Appellant has not demonstrated his entitlement to this, now mooted, relief. Therefore, Appellant's renewed request for a temporary restraining order is denied.

**SO ORDERED:**

Dated: White Plains, New York
        November 17, 2021

_____
Philip M. Halpern
United States District Judge